IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

CAMERON DEAN CEHULA,                :    Bankruptcy No. 04-22891 BM

            Debtor                  :    Chapter 7
*******************************************
CAMERON DEAN CEHULA,                :

            Plaintiff               :

        v.                          :    Adversary No. 04-2771 BM

SALLIE MAE SERVICING,               :

            Defendant               :

Appearances:   Herbert G. Mitchell Jr., Esq., for Plaintiff
               John P. Neblett, Esq., for Defendant

## MEMORANDUM OPINION

Debtor Cameron Dean Cehula seeks a determination that a debt he owes to defendant Sallie Mae Servicing Center for various education loans is not excepted from discharge. Excepting the debt from discharge, he asserts, will impose an undue hardship on him for purposes of § 523(a)(8) of the Bankruptcy Code.

Defendant Sallie Mae Servicing Center denies that excepting the debt from discharge will impose an undue hardship on debtor and insists that the debt is not dischargeable.

We conclude for reasons set forth in this memorandum opinion that excepting the debt from discharge will *not* impose an undue hardship on debtor and that it consequently is not dischargeable.

AO 72A

– FACTS –

Debtor is forty-five years old and divorced. He has a twenty-two year-old son who attends college in another state.

Beginning in 1979 and ending in 1998, debtor was enrolled at various colleges and obtained three degrees.

Debtor enrolled at California University of Pennsylvania in 1979 and graduated with a bachelor's degree in philosophy in 1982. He borrowed $2,500 to complete his education there. Repayment of the loan was guaranteed by Pennsylvania Higher Education Assistance Agency.

Debtor next studied theology and psychology at Lutheran School of Theology in Chicago in 1986 and 1987, but did not complete the program or receive a degree. He borrowed $8,200 to attend the program. The obligation was guaranteed by Illinois Student Assistance Commission.

Debtor then attended Chicago Theological Seminary in 1988 and 1989, where he received a master's degree in theology. He borrowed $3,300 to pay for tuition. The obligation was guaranteed by Illinois Student Assistance Commission.

Finally, debtor attended Lesley University starting in 1996 and graduated in 1998 with a master's degree in information management. Debtor borrowed a total of $54,825 to complete the program. The obligation was guaranteed by American Student Loan Association.

Between the time he graduated from Lesley University and the time he filed for bankruptcy, debtor repaid approximately $6,500 of the funds he had borrowed for his education.

AO 72A

Debtor was not successful in finding employment in information management after graduating from Lesley University. Between June of 1998 and August of 2003, debtor lived in Rhode Island, Wisconsin, Minnesota and New York. During this time, debtor had numerous relatively low-paying jobs, many of them part-time, which required little or no skill. Among other things, debtor sold newspapers and vacuum cleaners. He also worked as a customer sales representative, a sales clerk in a department store, and as a telemarketer. He earned between $7.25 and $12 per hour in these jobs.

Debtor's total income during these five years approximated $100,000.

Debtor returned to Pennsylvania in September of 2003 and presently resides with his elderly parents. He eventually found a job as a "financial sales consultant" and had a net monthly income of $1,429.55 by March of 2004.

Debtor filed a voluntary chapter 7 petition on March 5, 2004. The schedules report assets with a total declared value of $8,838.05 and liabilities totaling $102,646.49. His major asset was a 2003 Ford Ranger with a declared value of $6,000. Ford Motor Credit Company was granted relief from the automatic stay in October 0f 2004 and repossessed the vehicle.

Sallie Mae Servicing Center, the named defendant in this adversary action, was listed on the schedules as having an undisputed unsecured claim in the amount of $68,000 for a "student loan". United States Department of Education was listed as having an unsecured claim in the amount of $3,673.45 for an "education loan".

Debtor's schedules listed his monthly net income as $1,429.55 and his current monthly expenses as $2,048.00. Included among his monthly expenses were $820 for the

above educational loans, $257 in automobile installment payments, $100 for the support of his son, and $150 to repay a loan from his parents to buy a car.

Not long after filing his bankruptcy petition, for reasons that are not clear debtor quit his job as a "financial sales consultant" and became a part-time psychology therapist. He presently works three to seven hours a week and is paid $19 per hour.

On the same day as he filed his bankruptcy petition, debtor also commenced this adversary action seeking a determination that the debt owed to Sallie Mae Servicing Center is not excepted from discharge by § 523(a)(8) of the Bankruptcy Code. The matter has been tried and is now ready for decision.

– DISCUSSION –

Section 523(a)(8) of the Bankruptcy Code provides as follows:

(a) The discharge of a debt under section 727 ... of this title does not discharge an individual debtor from any debt --- ....
  (8) for ... [a] loan guaranteed by a governmental unit ...,
      excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.

11 U.S.C. § 523(a))(8).

It is not disputed that various governmental units secured the above education loans debtor obtained to further his post-secondary education.

This provision of the Bankruptcy Code is "self-executing". A student loan will not be discharged *unless* the debtor "affirmatively secures a hardship determination". *Tennessee Student Assistance Corp. v. Hood*, 541 U.S. 440, 124 S.Ct. 1905, 1912, 158 L.Ed.2d 764 (2004).

Congress enacted § 523(a)(8) to prevent abuses of education loan programs and

AO 72A
(Rev. 8/82)

to preserve their solvency. *In re Pelkowski*, 990 F.2d 737, 743 (3d Cir. 1993). The legislative debate preceding its enactment focused on the goals of rescuing student loan programs from "fiscal doom" and "preventing abuse of the bankruptcy process by undeserving debtors". *Id*. Individuals who benefit greatly from education loans that were paid for by funds guaranteed by a governmental unit all too frequently have sought to avoid their personal obligation to repay the loans. While they could have repaid the loans, they chose instead to resort to bankruptcy to avoid the belt-tightening and sacrifice that might be required.

In enacting § 523(a))(8), Congress intended to *limit* the dischargeability of debts arising out of education loans. *In re Pelkowski*, 990 F.2d at 744.

The standard for determining whether having to repay an education loan would result in "undue hardship" for purposes of § 523(a)(8) is well-settled in this circuit. In *Pennsylvania Higher Education Assistance Agency v. Faish (In re Faish)*, 72 F.3d 298 (3d Cir.), *cert denied*, 518 U.S. 1009, 116 S.Ct. 2532, 135 L.Ed.2d 1055 (1996), the Third Circuit adopted the three-part test set forth by the Second Circuit in *Brunner v. New York State Higher Education Services Corp*, 831 F.2d 395 (2d Cir. 1987). In the estimation of the Third Circuit, the *Brunner* test was the "most logical and workable of the established tests" for determining "undue hardship". *Faish*, 72 F.3d at 306.

"Undue hardship" requires proof that: (1) based on current income and expenses, the debtor cannot maintain a minimal standard of living for himself or herself and his or her dependents if required to repay the loan; (2) additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the loan repayment period; and (3) the debtor has made a good faith effort to repay the loan. *Faish*, 72 F.3d at 305.

AO 72A
(Rev. 8/82)

The debtor has the burden of proving all three of these requirements by a preponderance of the evidence. *Brightful v. Pennsylvania Higher Education Assistance Agency (In re Brightful)*, 267 F.3d 324, 327 (3d Cir. 2001). Each and every one of these elements must be satisfied before the debt is discharged. If any one of the elements is not satisfied, our inquiry must end there with a finding that the debt is excepted from discharge. *Faish*, 72 F.3d at 306. If the first element is not satisfied, for instance, the remaining two elements need not be considered. *Faish*, 72 F.3d at 305.

The first element requires examination of debtor's current financial condition to determine whether requiring debtor to pay the education loan would cause debtor's standard of living to fall below what is "minimally necessary". *Faish*, 72 F.3d at 305. A showing that debtor's finances will be "tight", without something more, will not suffice. *Faish* 72 F.3d at 306.

The second element requires proof that there are additional circumstances which indicate that the state of affairs described by the first element is likely to persist for a substantial portion of the loan repayment period. *Faish*, 72 F.3d at 305. To satisfy this element, debtor must prove a total incapacity in the future to repay the education loan for reasons over which debtor has no control. *Brightful*, 267 F.3d at 328.

As for the third element, debtor must prove that he or she has made a good faith effort to repay the loan over the entire time period from the date on which the first loan payment was due to the date on which debtor filed a bankruptcy petition. *Pellicia v. U.S. Department of Education*, 67 Fed. Appx. 88, 90 (3d Cir. 2003)(*per curiam*). Our inquiry must be guided by the notion that debtor may not willfully or negligently cause his or her

AO 72A
(Rev. 8/82)

own default. Debtor's financial plight must be due to factors beyond his or her reasonable control. *Faish*, 72 F.3d at 305.

A court inquiring whether debtor has made a good faith effort to repay an education loan must consider whether: (1) debtor incurred substantial expenses beyond those required to pay for basic necessities; and (2) debtor made efforts to restructure the loan before filing his or her bankruptcy petition. *Pellicia*, 67 Fed. Appx. at 91.

To put the above standard in perspective, the proper inquiry for determining whether or not a debt is excepted from discharge by reason of § 523(a)(8) is whether it would be unconscionable to require the debtor to take available steps to earn more income or to reduce expenses in order to repay the loan. *Faish*, 72 F.3d at 307.

After applying the above test to the facts of this case, we conclude that the debt owed by debtor to Sallie Mae Servicing Center for the above education loans is excepted from discharge by § 523(a)(8) of the Bankruptcy Code. Having to pay the debt would not impose undue hardship on debtor.

### Can Debtor Maintain A Minimal Standard Of Living?

If debtor's characterization of his financial condition is taken at face value, his standard of living arguably might fall below what is "minimally necessary" if he has to repay his education loans. Deeper analysis, however, reveals that the first prong of the undue hardship test as set forth in *Faish* is *not* satisfied in this instance.

Debtor's schedules, which presumably provide a "snapshot" of his financial situation when he filed his chapter 7 petition indicate that he was employed as a "financial sales consultant". His monthly net income at the time was $1,429.55 while his monthly expenses totaled $2,048.00, which exceed his net income by $618.45.

Included among the expenses debtor listed were: (1) an automobile installment payment ($257); (2) repayment of a loan from his parents; (3) support for his son attending college; and (4) two education loans, one to "Sallie Mae Student Loan" ($770) and the other to "U.S. Dept. of Education" ($50).

When he filed his bankruptcy petition, debtor owned a 2003 Ford Ranger for which he owed Ford Motor Credit Company $10,521.13. Ford Motor Credit Company was granted relief from the automatic stay to repossess the vehicle because debtor had defaulted on the obligation. From this we can safely infer that debtor is no longer making these installment payments and that his current monthly expenses should be reduced by $257 per month.

A payment in the amount of $150 per month for "Gasoline and Misc. Expenses" is also listed as a current expense on debtor's schedules. Debtor testified at trial that his parents had advanced money in an unspecified amount for the purchase of an automobile, presumably to replace the Ford Ranger. According to debtor, he is repaying them at the rate of $150 per month.

This loan, assuming there was one, is not listed as a debt anywhere on the schedules.[1] Aside from his testimony, debtor offered nothing that would establish that his parents "fronted" him the money or that he is repaying the loan at the rate of $150 per month.

---

[1] That is not all. Other than the Ford Ranger, no other vehicle is listed on the schedules as an estate asset.

Problems with this expenditure remain even if we assume that debtor's parents did lend him money to purchase a vehicle to replace the Ford Ranger and that debtor in reality is repaying the loan at the rate of $150 per month.

Because we do not know the amount of the loan, we cannot say with any certitude how long it would take debtor to pay off the loan in full. It could take a few months or a number of years. Without this information, we are not inclined to take the debt into account when considering whether debtor would be able to maintain a minimal standard of living during the period when he has to repay his education loans.

There is yet another problem. Even if the amount of the loan is substantial and it would take considerable time for debtor to pay it off in full, the debt has to be a *pre*-petition obligation because it is listed on the schedules debtor submitted along with his chapter 7 petition. If it is a pre-petition debt, the obligation is dischargeable along with all other pre-petition debts incurred by debtor and need not be paid by debtor subsequent to the filing of his bankruptcy petition.

While we recognize that debtor might feel he has a filial obligation to repay the loan from his parents, we will *not* take this expenditure into account when considering whether debtor will be able to maintain a minimal standard of living if he has to repay his education loans. To take it into account would undermine the bankruptcy process itself.

We also conclude that the $100 per month which debtor sends to his adult son attending college should be excluded entirely from debtor's monthly expenditures. Debtor testified at trial that the money comes from his parents and is earmarked for his son. If this is the case, debtor was merely a conduit through whom the money passed. The money

- 9 -

from his parents was not listed as an asset, and should not have been listed as an expense.

After these adjustments are taken into account, debtor's current monthly expenses decrease by $507 per month ($257 + $150 + $100 = $507) from $2,048 per month to $1,541 per month ($2,048 - $507 = $1,541). This in turn decreases the amount by which debtor's monthly expenses exceed his monthly net income to $111.45 ($1,541 - $1,429.55 = $111.45).

The problems with debtor's characterization of his monthly expenses do not end there.

According to debtor, he spends $820 per month to repay the above education loans. Nothing was offered at trial to substantiate the claim that debtor actually pays this amount each month in connection with his education loans. We think it unlikely that debtor actually spends $820 per month to repay the loans.

Even if we assume that this amount is the correct amount that is due and that debtor actually pays that amount every month, debtor has not taken into account various programs whereby the amount due every month on a school loan can be significantly reduced, in some instances to as little as $5 per month, with the unpaid balance forgiven after a specified period of time if debtor remains current on the reduced monthly payments.

Debtor testified at trial that he had attempted, without success, to have the monthly payments due on his education loans reduced in this manner, but offered no documentary evidence in support of his testimony. When asked at trial whether he presently had any interest in pursuing such a course of action, debtor scoffed at the question and indignantly

muttered something about the amount that was still owed even after he had paid $6,500 to reduce the amount of the debt.

We interpret debtor's response to mean that he has no interest in pursuing such a course of action and that if he has to pay anything at all on his education loans, he would rather pay $820 per month than something considerably less than that amount. Debtor's zero-sum approach is unreasonable. By so insisting, debtor attempted to ensure that his current monthly expenses would exceed his monthly net income by an amount sufficient to ensure that he would not be able to repay his education loans while maintaining at least a minimal standard of living.

Because we are not confident that debtor has done all that he can to have the monthly payments due on his education loans reduced, we are not willing to take at face value debtor's contention that he would not be able to pay off his education loans while maintaining at least a minimal standard of living. Were debtor to avail himself of these various programs, there would be a strong possibility that his monthly net income would be considerably greater than his total monthly expenses.

We conclude in light of the foregoing that debtor has failed to demonstrate, as he must if he is to prevail in this adversary action, that the first of the required elements for showing undue hardship for purposes of § 523(a)(8) of the Bankruptcy Code is present in this case.

### *Is Debtor's Financial Condition Likely To Persist?*

While it not necessary to consider the second and third elements for determining undue hardship for purposes of § 523(a)(8), we note that the second element also is not satisfied in this case. We are not persuaded that debtor's financial situation while he

- 11 -

AO 72A
(Rev. 8/82)

repays his education loans in the future need be as dismal as debtor would have us believe.

Debtor, who is only forty-five years old, is well-educated and has several post-secondary degrees. In addition to a baccalaureate degree in philosophy, debtor has two post-baccalaureate degrees, one in theology and the other in information management. He came across at trial as highly intelligent and articulate, and gave no indication that his employment prospects have been hampered by poor health.

The second element for proving undue hardship for purposes of § 523(a))(8) requires the existence of additional circumstances which indicate that debtor's financial dismal condition likely will persist for a significant portion of the loan repayment period. *Faish*, 72 F. 3d at 305. Debtor must demonstrate a total incapacity in the future to repay the loans for reasons over which he has no control. *Brightful*, 267 F.3d at 328.

Debtor has failed to prove that his current financial situation, which we previously determined is not as dire as he would have us believe, likely will persist well into the future *for reasons that are beyond his control.*

Debtor testified at trial that he sedulously sought employment in information management after graduating from Lesley University in 1998, but was not successful because the so-called "dot.com" bubble was bursting and no jobs in information management were to be had. Employers were retrenching instead of expanding. He further testified that his job skills are outmoded due to the rapid rate of change in information technology. According to debtor, he has instead been forced by necessity to take a series of low-paying jobs that have left him unable to repay his education loans.

We are not persuaded by debtor's argument. Even if we accept debtor's testimony

- 12 -

AO 72A
(Rev. 8/82)

that he continues diligently to search for a job in information management but has been stymied because his technical skills are outmoded, we reject his contention that he has had no alternative but to accept relatively low-paying jobs.

Debtor's argument relies on the faulty premise that there is no *tertium quid* between finding a relatively well-paying job in information management and finding a relatively low-paying job that requires little or no skill. There are lots of jobs available that pay less than does a job in information management but considerably more than a relatively low-paying job requiring virtually no skill. Debtor's employment history is devoid of any indication that he has ever had, let alone sought, such employment.

Considering his education and intelligence, it defies belief that debtor would be incapable of finding a job other than in information management which would bring home considerably more than the low-paying, unskilled jobs he has settled for in the past. Debtor's apparent belief that he cannot find such a job has no objective basis.

Debtor's penurious condition, in other words, is of his own making and not due to circumstances over which he has no control. Were debtor to find such a job and keep it, we expect that he would be able to maintain a decent, but not opulent, lifestyle and could afford to make payments on his education loans as they become due. In our estimation, it would not be unconscionable to require debtor to make such payments under such circumstances. Faish, 72 F.3d at 307.

An appropriate order shall issue.

BERNARD MARKOVITZ
U.S. Bankruptcy Judge

Dated: **July 22, 2005**

- 13 -

FILED
JUL 22 2005
CLERK, U.S. BANKRUPTCY COURT
WEST. DIST. OF PENNSYLVANIA

AO 72A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

**CAMERON DEAN CEHULA,** : Bankruptcy No. 04-22891 BM

**Debtor** : Chapter 7

*******************************************

**CAMERON DEAN CEHULA,** :

**Plaintiff** :

v. : Adversary No. 04-2771 BM

**SALLIE MAE SERVICING,** :

**Defendant** :

## ORDER OF COURT

**AND NOW**, this 22nd day of July, 2005, for reasons set forth in the above memorandum opinion, it hereby is **ORDERED, ADJUDGED** and **DECREED** that **JUDGMENT** be and hereby is entered **IN FAVOR OF** defendant Sallie Mae Servicing Center and **AGAINST** debtor Cameron Dean Chula. The debt owed to defendant by debtor is **EXCEPTED FROM DISCHARGE**.

It is **SO ORDERED**.

_____
**BERNARD MARKOVITZ**
U.S. Bankruptcy Judge

cm:  Herbert G. Mitchell Jr., Esq.
P.O. Box 152, Second Street
Hiller, PA 15444

John P. Neblett, Esq.
2040 Linglestown Road, Suite 203
Harrisburg, PA 17110

Office of United States Trustee

**FILED**

**JUL 22 2005**

CLERK, U.S. BANKRUPTCY COURT
WEST. DIST. OF PENNSYLVANIA

AO 72A
(Rev. 8/82)